**Olin SCURLOCK et al., Appellants,**

**v.**

**Martin C. LOVVORN, Appellee.**

**No. 16842.**

Court of Civil Appeals of Texas.

Dallas.

Dec. 30, 1966.

A. B. Conant, Jr., of Shank, Irwin & Conant, Dallas, for appellants.

Clarence Bentley, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Summary judgment proceeding. Rule 166–A, Vernon's Texas Rules of Civil Procedure. Martin C. Lovvorn brought this action against Olin Scurlock and wife, Mary Scurlock, and H. Gilson Scurlock, seeking judgment for an alleged breach of a written instrument. Plaintiff moved for summary judgment against all defendants and the defendant H. Gilson Scurlock moved for summary judgment against plaintiff. The trial court sustained plaintiff's motion for summary judgment against defendants Olin Scurlock and wife, Mary Scurlock, and proceeded to render judgment against said defendants. The court denied plaintiff's motion as to H. Gilson Scurlock and sustained this defendant's motion for summary judgment against plaintiff. This appeal has been perfected by Olin Scurlock and wife, Mary Scurlock, from that portion of the judgment granting plaintiff recovery against them for $30,000 plus interest. Plaintiff does not appeal from that part of the judgment denying him relief against defendant H. Gilson Scurlock.

Appellants, in four points of error, attack the trial court's action in granting appellee's motion for summary judgment against them because they contend that there were at least four genuine and material issues of fact presented by the record and therefore summary judgment was improper. Our judicial review of the problems here presented is governed by well established guidelines which were re-announced by our Supreme Court in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (1965), as follows: (1) summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law; (2) the burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him; (3) the evidence must be viewed in the light most favorable to the party opposing the motion; (4) if the motion involves the credibility of affiants or deponents the

motion should not be granted; (5) all conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true; (6) if there is uncontradicted evidence from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony, this being especially true where the opposite party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so.

By appellants' first point of error it is contended that there is a controverted question of fact on the issue of whether there was any consideration for the agreement upon which appellee sues. The written instrument, made the basis of appellee's cause of action against appellants, is as follows:

"June 29, 1959

"Mr. Martin Lovvorn, President
"Lovvorn-Davison, Inc.
"Meadows Building
"Dallas, Texas

"Dear Mr. Lovvorn:

"Upon your acceptance this letter shall constitute our agreement in connection with the loans which are due to you by Suburban Business Centers, Incorporated:

"The Corporation shall pay you the sum of $84,000 plus any interest which is accrued to date of payment. In consideration for services rendered and hereby acknowledged, *we personally promise to pay to you the amount of $25,000.00 in accordance with the following provisions:*

"a. You will be paid the above amount before either Gilson or myself receive from Suburban Business Centers, Incorporated any profits for our own use, whether these profits be in the form of dividends, bonuses or any salaries in the excess of those provided by my agreement of June 19, 1958 with W. H. Hudson. This provision should not prevent, however, the employment of Gilson Scurlock by the corporation at a reasonable salary for services rendered. For purposes of this paragraph, my agreement with W. H. Hudson provides that I shall receive $750.00 per month for three years and $300.00 per month thereafter.

"b. In the event of a pending sale of any of my interest in the corporation or any of Gilson's interest in the corporation, you shall be notified and the above amount shall be paid to you upon sale of all of our interests in the corporation. In the event of a sale of part of our interests, your claim shall be considered a prior claim to be paid before Gilson Scurlock or I receive any proceeds from such a sale.

"c. The $25,000.00 shall become due and payable, however, not later than January 2, 1964. If payment of $25,000.00 is not made by January 2, 1964, it is agreed that the amount due hereunder shall become $30,000.00 and shall be paid by July 2, 1964.

"This is a full settlement of all claims, contingent or otherwise, which may exist between any of the parties to this agreement on account of prior

contracts or otherwise, and no action shall be brought on any obligation other than set out herein.

"It is agreed and understood that Howard Busby will remain an officer of the corporation and will determine the availability of profits for the benefit of Martin Lovvorn.

"/s/ Martin C. Lovvorn, Pres. /s/ Olin Scurlock
"MARTIN LOVVORN OLIN SCURLOCK

"ACKNOWLEDGED:

"/s/ H. Gilson Scurlock /s/ Mary Scurlock
"H. GILSON SCURLOCK MARY SCURLOCK."

Appellants, by verified answer, expressly denied that the instrument sued upon was supported by consideration. Appellee sought to overcome this verified defense by introducing, through his affidavits in support of his motions for summary judgment, a note, a deed of trust and a contract, the release of such instruments, he contended, being the consideration for the agreement. Thus we are required to examine the terms of the various instruments to determine whether their release has the effect of creating a legal consideration for the execution of the basic instrument sued upon.

An examination of the documents and affidavits presented to the trial court in connection with the motion for summary judgment reveals a most complex course of dealings between the parties to this litigation, as well as between corporations which are not parties. It would serve no useful purpose to detail the elaborate and complicated transactions carried on between the parties and the corporations involved and we will therefore attempt to confine our recitation of the antecedent facts to those which are relevant to the issue here presented.

Prior to June 29, 1959 Martin C. Lovvorn was president and a substantial stockholder in a corporation known as Lovvorn-Davison, Inc. According to Lovvorn's affidavit Lovvorn-Davison, Inc. arranged financing and provided consultation services for a corporation known as Suburban Business Centers, Incorporated, which was engaged in the building of a shopping center and which said corporation was largely owned and controlled by Olin Scurlock and his wife Mary. Lovvorn-Davison, Inc. owned a note and a contract entered into and executed by Suburban Business Centers, Incorporated, and that "on and before June 29, 1959 Lovvorn-Davison, Inc. had a substantial and considerable claim against said corporation partially owned and controlled by the said Olin Scurlock and that there was considerable discussion between this affiant and Olin Scurlock concerning the liquidation of such claim." According to Lovvorn he, as assignee of Lovvorn-Davison, Inc., and Olin Scurlock, Mary Scurlock and H. Gilson Scurlock, entered into the agreement of June 29, 1959 for the purpose of settling various disputed claims and clarifying the indebtedness between Lovvorn-Davison, Inc. on one hand and Suburban Business Centers, Incorporated and Olin Scurlock on the other hand. He alleged that on such occasion Lovvorn-Davison, Inc. surrendered a secured note in the amount of $100,000, a deed of trust, and a contract, which it had with "Olin Scurlock and the said corporation, Suburban Business Centers, Incorporated", to defendant Olin Scurlock in consideration for and upon the execution of the agreement. Lovvorn further said that "Lovvorn-Davison, Inc., had fully performed all of its obligations under Exhibit C (the deed of trust)."

The note in question is dated May 28, 1957 and in the principal sum of $100,000

executed by Suburban Business Centers, Inc. by Olin Scurlock, President and "Co-signer: Olin Scurlock". Said note is payable to one Howard Busby and shows to have been assigned by Busby to Lovvorn-Davison, Inc., without recourse. The note provides that:

"This note is due and payable as follows, to-wit:

"The principal balance, together with interest at the rate of 6% per annum *from the completion date of the improvements on the property known as the 'NORTH TRACT'* * * *." (Emphasis ours.)

The deed of trust is executed by Suburban Business Centers, Incorporated, by Olin Scurlock, President and is given to secure the payment of the above described note.

The contract, dated May 17, 1957, shows to have been executed by Lovvorn-Davison, Inc. by Martin C. Lovvorn and Suburban Business Centers, Inc. by Olin Scurlock, President. In Paragraph 9 of the contract it is provided that:

"The term 'Scurlock' shall be construed to mean: 'Suburban Business Centers, Inc.', a Texas Corporation, and the instruments executed hereunder shall specify such corporation instead of Scurlock. Scurlock shall endorse the notes herein to the extent of $90,000.00."

The contract provides that for services rendered by Lovvorn-Davison, Inc. in connection with the shopping center known as "Irving Shopping Village" "Scurlock" agrees to execute a note in the principal amount of $180,000, secured by first lien on the north and south tracts of land in question, said amount being divided (a) $80,000 due on or before one year from date of note and (b) the balance of $100,000 payable together with interest at the rate of six per cent from the completion date of the north tract.

In opposition to the summary judgment motion Olin Scurlock made an affidavit in which he states that there was "absolutely no consideration for the $100,000.00 note payable to Howard Busby" and "furthermore, the note on its face shows that it was not to become payable until the completion of the improvements on the north tract of the shopping center. The north tract was never actually completed." He further stated:

"The sole purpose of the note was to be the profit which Lovvorn-Davison, Inc. would realize from the completion of the entire project. Lovvorn-Davison did not pay anything of value, either money or anything else for the assignment of the note by Howard Busby."

He further stated that:

" * * * any claims referred to in the contract set out as Exhibit A to Mr. Lovvorn's Affidavit and as Exhibit No. 7 attached to my deposition were claims against Suburban Business Centers, Inc. and not against myself or Mary Scurlock personally."

Howard Busby executed an affidavit in opposition to the motion for summary judgment in which he stated that as payee of the $100,000 note, which was co-signed by Olin Scurlock, that he did not give any money or anything else of value to Suburban Business Centers, Inc. or to Olin Scurlock in consideration for the execution of this note. He said:

"Neither did I receive any money or anything else of value from Lovvorn-Davison, Inc. or Martin Lovvorn, in consideration for the transfer and assignment of this note to Lovvorn-Davison, Inc."

He also said:

"The $100,000.00 was to be in payment of expected profits upon the completion of the north tract of the Irving Shopping Village and payment was not to begin on the note until the completion of the north tract as is stated in the note. The

reason the note was made payable to me rather than directly to Lovvorn-Davison, Inc. was, as I recall, an effort to avoid a subsequent claim by Suburban Business Centers, Inc. or Olin Scurlock, that there was no consideration for the execution of the note by Suburban Business Centers, Inc. and Olin Scurlock."

 In this state of the record, when viewed in the light of the rules established and recited above, there can be no escape from the fact that the question of lack of consideration of the written instrument sued upon is adequately raised and should have been submitted to a trier of fact for resolution. Numerous questions are presented concerning the personal liability of Scurlock and wife as opposed to the liability of the corporation controlled by them and which is not a party to this litigation. Appellee makes no effort to refute the fact that the $100,000 note is not due, according to its own terms. No effort is made to refute the fact that the improvements on the north tract, referred to in the note, were never completed. It was not the duty of the trial court, nor is it our duty, to resolve the issues presented. We find from a reading of this record that the existence of a valid legal consideration for the instrument sued upon is not established as a matter of law and therefore summary judgment should not have been rendered.

By their second point of error appellants contend that the record reveals the controverted question of fact on the issue whether the agreement upon which appellee sues was signed by appellants under duress of property.

In his affidavit in opposition to the motion for summary judgment appellant Olin Scurlock stated that appellee had already attempted to foreclose the deed of trust and that:

"He was threatening to pull another foreclosure which, of course, he had no right to do, since the $100,000.00 note for which the deed of trust he was threat-ening to foreclose was given to secure, was not payable until the completion of all of the north tract * * *. Mary Scurlock and I signed the contract of June 29, 1959 personally, rather than as officers of Suburban Business Centers, Inc. solely as a result of these threats and duress asserted and exerted by Martin C. Lovvorn. We felt that this was the only hope we had of salvaging the shopping center project and Suburban Business Centers, Inc., the corporation in which we had a large interest."

Appellant Scurlock also testified in his deposition that appellee had "held the threat" of foreclosure to compel payment by him personally of the corporation's indebtedness. Appellee made no effort to controvert this portion of appellant Scurlock's affidavit and deposition testimony, except by extensive cross-examination of Olin Scurlock.

 The doctrine of duress of property is well recognized in Texas law. That there may be duress of property as well as of person is now thoroughly established. McGowen v. Bush, 17 Tex. 195, 196, 201; Oliphant v. Markham, 79 Tex. 543, 15 S.W. 569, 23 Am.St.Rep. 363. Our courts have held that duress of property cannot exist without there being a threat to do some act which the threatening party has no legal right to do, some illegal exaction or some fraud or deception. The restraint must be imminent and such as to destroy free agency without present means of protection. Ward v. Scarborough, Tex.Com. App., 236 S.W. 434; Dale v. Simon, Tex. Com.App., 267 S.W. 467. This rule of law, established many years ago, has been consistently followed. Outlaw v. Settegast, Tex.Civ.App., 338 S.W.2d 291; Lawrence v. J. M. Huber Corp., Tex.Civ.App., 347 S.W.2d 5; and Daugherty v. Gower, Tex. Civ.App., 403 S.W.2d 535.

 The facts testified to by appellant Olin Scurlock by affidavit and deposition clearly raise the issue of duress of property

**532**

which should not have been summarily decided by the trial court.

By appellants' third point contention is made that there was a controverted question of fact upon the issue of whether the obligation sued upon was for the payment of usurious interest.

■ Rule 93, T.R.C.P., provides inter alia that a defense of usury must be raised by verified pleadings. The question of usury was not presented by appellants' pleadings and is brought forward here for the first time. Appellants' point is overruled.

By their fourth and final point of error appellants contend that the record demonstrates the controverted question of fact of whether the additional $5,000 required under the agreement upon which appellee sues was a penalty or was interest at a usurious rate. The contract sued upon provides that if the sum of $25,000 is not paid by January 2, 1964 the amount due shall become $30,000 and shall be paid by July 2, 1964. The instrument is silent as to the nature of this added amount and appellants contend that there are only two possibilities: (1) the $5,000 was a penalty for failure to pay $25,000 by January 2, 1964, or (2) it was interest on $25,000 for its use for a period of six months, and therefore usurious. As we have stated in connection with our disposition of appellants' point 3 there were no pleadings relating to usurious interest pursuant to Rule 93, T.R.C.P.

■ However, the specific terms of the contract sued upon clearly present a question of construction of the meaning of the $5,000 additional sum therein provided. Such amount is either to be considered liquidated damages or a penalty. The answer to the question depends upon the true intention of the parties which is to be ascertained by the terms of the instrument itself, if possible. Whenever there is a doubt in regard to such a matter the law will declare the sum reserved to be a penalty rather than liquidated damages. Kellam v. Hampton, 58 Tex.Civ.App. 484, 124 S.W. 970; Durst v. Swift, 11 Tex. 273; Hall v. York, 16 Tex. 18.

In Sanders Nursery Co. v. J. C. Engelman, Inc., Tex.Civ.App., 109 S.W.2d 1131 the court, relying upon previous Supreme Court decisions, said:

"The inclination of the court is to construe the amount named as a penalty, unless the evident intention of the parties clearly appears to the contrary, Eakin v. Scott, 70 Tex. 442, 444, 7 S.W. 777; and the courts seem to have placed the burden upon the party claiming it to be liquidated to show that such was the intention of the parties, Farrar v. Beeman, 63 Tex. 175, 180; and that, where doubt appears, it will be resolved in favor of a penalty, Kellam et al v. Hampton, 58 Tex.Civ.App. 484, 124 S.W. 970."

The court in this instance obviously and by implication resolved the question without the benefit of testimony revealing the true intention of the parties with reference to such added amount. We think that the record presented an issue of fact which should have been resolved by a trier of fact. Appellee, in his brief, impliedly concedes there may be a question as to this issue and says that if we reverse the case it should only be limited to the single matter. We cannot agree. For the reasons stated the entire case must be reversed so that all controverted issues raised by the pleadings and evidence may be submitted to the court or a jury for determination.

The judgment of the trial court is

Reversed and remanded.